[Civ. No. 313.    Third Appellate District.—September 7, 1907.]

## CHARLES FINKBOHNER, Respondent, v. GLENS FALLS INSURANCE COMPANY OF GLENS FALLS, NEW YORK, Appellant.

FIRE INSURANCE—CONSTRUCTION OF POLICY—SUBSTANTIAL COMPLIANCE WITH TERMS REQUISITE.—The general rule that policies of insurance are to be construed strictly against the insurer and in favor of the insured applies where there is ambiguity in the terms of the policy, and cannot be invoked to change the nature of the contract, or to affect the rule of law that the insured must be held to a substantial compliance with the terms of the policy.

ID.—FORFEITURE OF POLICY—BREACH OF CONDITION—CHANGE OF INTEREST—CONTRACT OF SALE WITH POSSESSION—EQUITABLE OWNERSHIP.—Where a policy of fire insurance provides that the policy shall

be void, upon a change of the title, interest or possession of the insured property (except change of occupants without increase of hazard), unless an agreement thereto is made upon or added to the policy, a contract by the insured to sell the property, giving to the purchaser the possession and control of all income, and conferring upon him the equitable ownership in fee, without any agreement thereto affixed to the policy, is a breach of condition avoiding the policy, where the fire occurs after such change of interest and possession.

[D.—FINDING AGAINST INCREASE OF RISK UNSUPPORTED.—In view of the facts of this case, a finding that there was no increase of the risk is unsupported. Such finding could only apply when there is a mere change of tenancy, and not to a change in the interest of the insured by sale to a vendee in possession. In the latter case, where there is no consent of the insurer, any loss by fire will fall upon the vendee, who will still be liable to pay the full purchase price to the insured, thus giving to the insured the inducement of temptation to be indifferent concerning the care of the property.

APPEAL from an order of the Superior Court of San Joaquin County denying a new trial.  W. B. Nutter, Judge.

The facts are stated in the opinion of the court.

T. C. Van Ness, and Nicol & Orr, for Appellant.

R. C. Minor, for Respondent.

BURNETT, J.—In consequence of the destruction by fire of a frame dwelling belonging to plaintiff and which was insured on June 14, 1903, for three years by appellant, this action was brought on the insurance policy for the sum of $600. Plaintiff had judgment and defendant appealed from the order denying its motion for a new trial.

The main controversy hinges upon the effect to be given to this clause in the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void . . . if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise."

April 6, 1905, more than two months prior to the fire, without any indorsement being made on said policy or addition

thereto and without the knowledge or consent of appellant, the respondent entered into a written agreement with M. D. Eaton and W. D. Buckley, the nature of which the following clause will show: ''The said party of the first part (Charles Finkbohner) in consideration of the covenants and agreements on the part of the said parties of the second part herein contained, agrees to sell and convey unto the said parties of the second part and said second parties agree to buy''—describing the property including the land upon which said dwelling-house stood—''for the sum of eight thousand one hundred and twenty-two and 50/100 dollars, and the said parties of the second part agree to pay the said sum . . . as follows, to wit: $1200.00 on the execution of this agreement and the balance . . . on or before Nov. 1, 1905. It being understood that the party of the first part will accept a mortgage made by Zack Martin for $3213.00 at six per cent net, payable on or before three years from date of execution, secured by 32.13 acres of land, being parts of lots 25, 26 and 27, as cash for $3213.00 in said last-named payment. It is mutually understood and agreed that the parties of the second part are to have immediate possession of said land and all income therefrom.'' Then follow the formal covenant to execute a deed on the payment of the money and the stipulation that the agreement shall bind heirs, etc., and that time is of the essence of the contract. On the same day the said Eaton and Buckley entered into a similar contract affecting a part of said property and including said dwelling-house, with the said Zack Martin, who agreed to pay for said property the sum of $6,104.70. Twelve hundred dollars were paid on the execution of the agreement. Sixteen hundred and odd dollars were to be paid on or before November 1, 1905, and the balance was to be secured by a mortgage referred to in the aforesaid agreement between respondent and Eaton and Buckley. Finkbohner indorsed his approval on said contract, and Martin, as provided therein, went into immediate possession of said premises and was occupying said dwelling-house at the time of the fire, which occurred June 23, 1905. The deferred payments had not then been made, as they were not due and the legal title to the premises was still in respondent.

In the construction of insurance policies great favor is shown to the insured. The rule generally recognized is to construe the covenants strictly against the insurer and liberally in

favor of the insured. We need not stop to philosophize as to the reason for this rule. It is sufficient to say that it has been generally indorsed by the higher courts, but, of course, it is not sufficiently indulgent toward the insured as to ignore or nullify his express and unequivocal agreement. It cannot be invoked to change the nature of the contract, but only to resolve an uncertainty or ambiguity in favor of the party who is likely to be misinformed or imposed upon. The law, while tender of the rights of the insured, will hold him to a substantial compliance with the terms of his policy, as it will the parties to any other contract. Any other rule would be opposed to the interests of the honest policy-holder, as well as subversive of the rights of the insured, and it could not be countenanced by a court of justice. In the case at bar did the agreement to convey the property, together with the entry into possession by Martin in pursuance of that agreement, constitute such a change in the title or interest or possession of respondent as to render the policy void? The identical question has not been involved in any case decided by our supreme court, although said court has indulged in some observations indicating, as we shall presently see, that such condition would avoid the policy. In other jurisdictions the case has been fairly presented and determined.

In *Grunauer* v. *Westchester Fire Ins. Co.*, 72 N. J. L. 289, [62 Atl. 418], a recent case decided by the court of errors and appeals of New Jersey, it is said: "It is not open to question, that under the admitted facts, a change at least in the possession and right of possession of the insured in the premises had taken place. The period of interest in the insured embraced in the condition is incontestably from the beginning to the expiration of the policy. That such conditions are reasonable and valid, even though they tend to create forfeiture of the policy, cannot be denied. . . . Undoubtedly such contract creates the relation of trustee and *cestui que trust* between vendor and vendee. It produces in equity a complete transition of the vendor's holdings from real to personal, and gives the vendee the equitable ownership. After such contract the vendor's interest is no longer real estate, and the unpaid purchase money is personalty and goes to the vendor's personal representative in case of his death. Thereafter the assured could have but a diminished incentive in the preservation of the property from injury, and such result was the very object

intended by the insurer to be guarded against by the inserted condition. Although the vendor still retains the legal title to the land agreed to be sold and conveyed, he thereafter holds it only as a trustee for the vendee, who becomes the equitable and beneficial owner."

In *Brighton Beach Racing Assn.* v. *Home Ins. Co.*, 47 Misc. Rep. 177, [93 N. Y. Supp. 654]; under a similar contract to convey, the court said: "It is plain that there was a change in interest. There was in fact a change of title. The possession given under the contract of sale made the purchaser the equitable owner in fee. . . . Although the contract said he was to occupy 'as tenant of the party of the first part without any pay or rent thereof,' it is manifest that the contract gave him more than the interest and rights of the tenant." ·

Again, in *William Skinner & Sons etc.* v. *Houghton*, 92 Md. 68, [84 Am. St. Rep. 485, 48 Atl. 85], the court of appeals of Maryland held to the same doctrine, saying: "Can it be doubted that there was a change in the interest in this property? As long as the insured has made no change in his estate in the property, a company may be perfectly satisfied to continue the insurance; but if he makes such a change as to divest himself of all interest in the property, excepting a vendor's lien for the purchase money, and has a responsible party bound for the payment of that, he does not have the same motive for the protection of the property that he had before." To the same effect is *Cottingham* v. *Fireman's Fund Ins. Co.*, 90 Ky. 439, [14 S. W. 417]. In *Gibb et al.* v. *Fire Ins. Co. of the County of Philadelphia*, 59 Minn. 267, [50 Am. St. Rep. 405, 61 N. W. 137], the supreme court of Minnesota takes a similar view and holds that "the word *interest* is broader than the word *title*, and includes both legal and equitable rights."

No case has been cited by respondent where the vendee entered into possession under such a contract of sale and a fire occurred under similar circumstances as we have here in which it has been held that the policy was not forfeited. In *Grable Trustee etc.* v. *German Ins. Co. of Freeport*, 32 Neb. 645, [49 N. W. 713], the supreme court of Nebraska held that the policy was not forfeited, but in that case there was no change of possession of the property. *Walradt* v. *Phoenix Ins. Co. of Hartford*, 136 N. Y. 375, [32 Am. St. Rep. 752, 32 N. E. 1063], and *Herman* v. *Katz*, 101 Tenn. 118, [47 S. W. 86], involved the question of the effect of the possession of the personal

property by the sheriff under a writ of execution. It was held that there was no change in the title or interest, but simply of possession without any increase of hazard. *McClellan* v. *Greenwich Ins. Co.,* 107 La. 124, [31 South. 691], was a similar case relating to the effect of a levy of a writ of attachment on personal property. In *Lane* v. *Marine Mutual Fire Ins. Co.,* 12 Me. 44, [28 Am. Dec. 150], it appears there was a parol lease of the store and goods, but a resumption of possession by the insured before the fire. It was held that there was no violation of the covenant against *alienation* so as to render the policy void. In *Pelton* v. *Westchester Ins. Co.,* 77 N. Y. 605, the party under contract to purchase had entered into possession of the property. He had it insured, stating that the property was his. A loss occurred, and the company defended upon the ground that the interest of the insured had not been fully stated, but it was held that the defense could not be maintained, as the insured was the equitable owner, and this was sufficient to satisfy the requirement of the policy. Respondent also cites Joyce on Insurance, section 2284, to the effect that ''the fact that the insured has made a contract to sell the insured property does not of itself constitute an *alienation* within the meaning of the policy; the sale must be actually consummated and there must be such a transfer as to divest the insured of his title''; but in the same section the following doctrine is also approved: ''If the owner of insured premises makes an *executory agreement to convey* the premises and the vendee under such an agreement *takes possession and pays a part of the purchase money,* this is a breach of the condition avoiding the policy in case any change takes place *in the interest of the insured.*''

The decision in *Smith* v. *Phoenix Ins. Co.,* 91 Cal. 323, [25 Am. St. Rep. 191, 27 Pac. 738], is grounded upon the proposition that the possession of the tenant was by virtue of the lease and not as the equitable owner. As said by the court: ''The real and only question in the case is whether the contract of sale embraced in the lease, or superadded to it, wrought a change in the title to the insured premises within the meaning of the policy, or imparted to the possession of Stewart a character materially different from the possession of a tenant.'' It was justly held that Stewart's possession was simply that of a tenant. No other conclusion could have been reached in view of the express terms of the instrument demising the

property to Stewart for the term of five years at a fixed rent payable monthly, with the provision that ''said party of the second part *may at any time* during said term of five years purchase said hotel,'' etc. In reference to the latter clause the court said: ''In considering the question before us, we may lay out of view the stipulation giving Stewart the privilege of purchasing, for clearly he was not thereby bound to take the property and pay for it, even if it remained whole and intact.'' It was further held that the possession of the property by Stewart was with the implied consent of the insurer.

The difference between that case and the one at bar is so marked that the said opinion of the supreme court furnishes us little assistance. It contains, however, some observations— in a sense probably *obiter*—that indicate a view of the question here in harmony with what we have already expressed. For instance, in reviewing the cases from other jurisdictions it is said: ''For the purpose of this decision, it is sufficient to say that no case has been cited, and we have discovered none in which the vendee has been held bound to pay the purchase price where a valuable part of the property has been destroyed before the day fixed for payment and conveyance, *unless he has taken possession under the contract of sale* or has the right to such possession under the contract before the occurrence of the loss.''

In the later case of *Mackintosh* v. *Agricultural Fire Ins. Co.,* 150 Cal. 440, [119 Am. St. Rep. 234, 89 Pac. 102], our supreme court bases its decision against the insurance company upon the ground as stated in the syllabus that ''There is not a change of interest or of possession in the insured property, which under a fire policy works a forfeiture, where a contract for purchase thereof is given, which amounts to a mere *option,* with right of possession for experimental purposes, subject to free access and management by the owner.'' In the opinion, though, written by Mr. Justice Shaw, we find this language: ''The change of interest referred to in the policy, in view of the well-known rule of construction applied to insurance policies requiring them to be construed most strongly against the insurer, refers to some change of interest which would make the loss in case of destruction fall upon the buyer, so that by such change the original policy-holder would lose his interest in maintaining the property and pro-

6 Cal. App.—25

tecting it from fire.   It does not refer to a mere right which another party may acquire which does not change the risk in case of loss, nor give the third party more than a mere option to purchase the property.   This rule regarding the change of risk might be different if it were not for the qualified character of the possession which was given to Baker under the arrangement between the parties.''

A different clause of an insurance policy was under review in the case of *Goorberg* v. *Western Assur. Co.*, 150 Cal. 510, 119 Am. St. Rep. 246, 89 Pac. 130.   It is there said by the court, speaking through Mr. Justice Sloss: ''The purpose of the warranties and conditions is to protect the insurer from liability on risks which he would have been unwilling to take *for the stipulated premium, or perhaps for any premium. . . .* The risk is greater, then, where a man insures a house which is on land not belonging to him than it would be if he owned the land.''   In that case the judgment was reversed because of misrepresentation by the insured as to the ownership of the land, but the reason for the ruling applies equally to the condition where after the policy is issued there is a change of ownership without the consent of the insurer. A moment's reflection will show that the very contingency sought to be avoided is present in the case at bar.   It is manifest that the risk was increased without the consent of the insurer for the obvious reason that whatever loss might be occasioned by the fire would fall upon Martin and not upon Finkbohner.   Hence the inducement or temptation for the latter to be indifferent concerning the care of the property. Where a party enters into possession of property under an agreement to purchase and while in possession, without any fault of the vendor, the property is destroyed by fire, it could hardly be maintained that the vendee would be relieved of the liability for the purchase price.   The rule is stated in section 1406 of Pomeroy's Equity Jurisprudence as follows: ''The effect of an executory contract for the sale of land, in working an equitable conversion and in clothing the purchaser with an equitable estate in the land, and the vendor with an equitable ownership of the purchase price, has already been described.   As soon as the contract is finally *concluded* although it is wholly executory in form these rights and estates become fixed and vested.   It follows, therefore, that the pur-

chaser, being the equitable owner, is entitled to all the *benefits* and assumes all the *risks* of ownership.''

It is of no importance that the learned trial judge found that there was no increase of the risk from the change of possession. It is obvious that such a finding is material only where possession is held by a tenant of the insured. Assuming as a matter of fact that Martin is just as careful and conscientious as Finkbohner and that the danger of fire was *actually* not increased in consequence of Martin's possession of the property, yet the law applies a general standard to all similar cases and constrains us to hold that the insured, having lost his pecuniary interest in the protection of the property, the risk was thereby increased and under the express terms of the policy the insurer is relieved of liability. To hold otherwise would be for us to declare that the parties are not to be bound by the terms of their agreement. This is not within the province of a judicial tribunal. The insured should have secured the consent of the insurer to the change of title, as provided in the policy. He made no attempt to do so and we are powerless to relieve him of the consequences of his neglect.

The order denying the motion for a new trial is reversed.

Chipman, P. J., and Hart, J., concurred.